UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREGORY BROWN,

    Plaintiff,

v.                                                      Case No. 2:11-cv-252
                                                      HON. ROBERT HOLMES BELL

PATRICK HARRINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Gregory Brown, an inmate at the Ryan Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Patrick Harrington and Robert Norton, both of whom were employed by the Michigan Department of Corrections at Kinross Correctional Facility during the pertinent time period.

Plaintiff alleges in his complaint that Defendants refused to correct errors in his Eligibility/Lifer Review Report (PER). Plaintiff contends that the Parole Board relied on these errors to a constitutionally significant degree in recommending that the Governor deny Plaintiff's application for commutation. Plaintiff also contends that the Parole Board is likely to rely on these errors to a constitutionally significant degree in future proceedings to Plaintiff's detriment. Plaintiff alleges that Defendant Harrington corrected similar errors to those made in Plaintiff's PER. Plaintiff further alleges that Defendants retaliated against Plaintiff because Plaintiff filed a grievance against Defendant Harrington for failing to correct the errors in his PER.

Plaintiff claims that Defendants' conduct violated his rights to due process and equal protection of the law under the Fourteenth Amendment. Plaintiff also claims that his First Amendment rights were violated when Defendants retaliated against him for filing a grievance against Defendant Harrington. Plaintiff states that he is suing Defendants in their official and individual capacities. Plaintiff seeks declaratory and injunctive relief, as well as $225,000 in damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately,

the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The following facts are taken from Plaintiff's complaint, exhibits, and affidavits. On the morning of December 18, 2009, Defendant Patrick Harrington, the Assistant Resident Unit Supervisor, called Plaintiff into his office and informed him that he was scheduled to be interviewed by the Parole Board on March 24, 2010. Defendant Harrington also informed Plaintiff that he had prepared a Parole Eligibility Report (PER) on his behalf for receipt by the Parole Board. Defendant Harrington then gave a copy of the PER to Plaintiff. Plaintiff then informed Defendant Harrington that Defendant Harrington did not give him the opportunity to review the contents of the file in accordance with P.D. 06.05.103 before completing his PER. Defendant Harrington responded, "I'm not reviewing your file with you." (Compl., ¶ 3, Page ID#5.) Defendant Harrington asserts that Plaintiff never asked to view his file. (Docket # 22, ¶ 1, Page ID#165.)

Plaintiff left Defendant Harrington's office, but returned a few minutes later when he realized there were errors in his PER. Plaintiff notified Defendant Harrington of these errors and requested that these errors be corrected according to policy. Defendant Harrington replied, " I'm not changing your PER, so take it up with the Board." (Compl., ¶ 5, Page ID#5.) Plaintiff Brown informed Defendant Harrington that he had a pending application for commutation submitted to the Parole Board. Plaintiff Brown listed the errors that he wanted corrected:

      a.  That Plaintiff did not have (12) major misconduct reports since his last PER was prepared;

      b.  That Plaintiff was not in Detention since the last PER was prepared;

      c.  That the PER did not reflect a list of Plaintiff's self help rehabilitation certificate by name and date of completion of each certificate according to MDOC OP 06.05.103 (only cage your rage was cited);

      d.  That the PER did not include noted information from the Residential Unit Officers (RUO) Block reports of Plaintiff's adjustment, attitude, and misconducts pursuant to OP 06.05.103 under the PER Institutional adjustment section;

      e.  That Plaintiff's PER was not prepared according to PD 06.05.103 nor corrected according to KCF-OP 06.05.103.

(Compl., ¶ 7, Page ID#6.)

Defendant Harrington responded that he was aware that Plaintiff had not received 12 major misconducts since his last PER, but attributed the error to a computing malfunction that "self-populated" the major misconduct field in the PER form. Defendant Harrington also said that he "didn't do that section in the PER." (Compl., ¶ 8, Page ID#6.)

On December 18, 2009, Plaintiff's PER was electronically forwarded to the Parole Board. On December 18, 2009, the Parole Board gave a denial recommendation on Plaintiff's application for commutation. The Parole Board proceeded to forward its denial recommendation to the Governor's office on December 21, 2009.

On the afternoon of December 18, 2009, Plaintiff spoke with Defendant Norton, the Resident Unit Manager (RUM) and Defendant Harrington's immediate supervisor. Defendant Norton reviewed and approved the PER furnished by Defendant Harrington. Plaintiff notified

Defendant Norton of the errors in the PER.  Defendant Norton responded that if there were errors in the PER, then "Harrington will correct them."  (Compl., ¶ 15, Page ID#7.)

On December 20, 2009, Plaintiff filed a grievance against Defendant Harrington for refusing to correct his PER.  On December 21, 2009, Plaintiff received a letter from the Parole Board informing him that his commutation had been forwarded to the Governor's office for consideration.  In a letter dated February 11, 2010, the Parole Board stated that Plaintiff's application for commutation had been denied by the Governor based on the Board's recommendation.

On January 5, 2009, Plaintiff received a grievance interview with Defendant Norton, who was the First Grievance Respondent, Grievance Identifier Number KCF-09-120-1806-17z.  Plaintiff listed the errors that had been made in his PER and requested that they be corrected.  Defendant Norton replied, "Because you filed a grievance against Harrington your PER will not be corrected."  (Compl., ¶ 20, Page ID#7.)  John Ransom overheard this statement while waiting to see Defendant/RUM Norton.  Defendant Norton denies that he made that statement.  (Docket # 22, ¶ 3, Page ID#167.)

On January 6, 2010, Plaintiff wrote a letter to inform the Parole Board that his PER contained errors.  Plaintiff also informed the Parole Board that the ARUM and RUM refused to correct the errors, and that he was advised by the ARUM and RUM to "take the issue up with the Board when he [Plaintiff] sees them."  (Compl., ¶ 26, Page ID#8.)

On January 8, 2010, Plaintiff received a written grievance response from Norton addressing the 12 major misconducts recorded since Plaintiff's last PER.  It stated: "This field is self populating and Harrington did not put that information in the PER."  (Compl., ¶ 27, Page ID#8.)  Defendant Norton further stated that "the PER was prepared in accordance with OP 06.05.13."  (Compl., ¶ 28, Page ID#8.)  Defendant Norton then denied Plaintiff's Grievance against Defendant

Harrington. On January 15, 2010, Plaintiff filed a Step 2 Grievance to Warden Jeffrey Woods. On February 5, 2010, Warden Woods responded to the Step 2 Grievance, acknowledging that Plaintiff had not received 12 major misconducts since his last PER. Warden Woods did not acknowledge any other errors. Citing PD 06.05.103, Warden Woods stated that Plaintiff could present any unresolved questions regarding the PER to the Parole Board.

On March 24, 2010, Plaintiff's Parole Board interview was cancelled. On March 31, 2010, Plaintiff received a letter from the Parole Board acknowledging receipt of his January 6, 2010, letter. The Parole Board informed Plaintiff that his concerns about the errors in his PER should be discussed with his RUM [Defendant Norton]. Plaintiff then presented this letter from the Parole Board to Defendant Norton, who refused to talk further about the PER. (Compl., ¶ 44, Page ID#10.)

Plaintiff claims that Defendants violated his Fourteenth Amendment right to due process. Plaintiff's claim is based on the assumption that the Parole Board based its recommendation to deny Plaintiff's application for commutation on the PER prepared by Defendant Harrington, which contained incorrect information.

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held

that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's Parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Accordingly, Plaintiff has no liberty interest at stake. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights. *See Sweeton*, 27 F.3d at 1164-65. In the opinion of the undersigned, Defendants' Motion for Summary Judgment as to Plaintiff's due process claims should be granted.

Plaintiff claims that Defendants violated his Fourteenth Amendment right to equal protection of the laws. Plaintiff asserts that he was a member of a "class of one," entitled to equal protection of the laws because prisoner Bryant Matthew Jones had his PER corrected after a similar mistake was made involving the number of misconducts included in his PER. (Compl., ¶ 62, Page ID#13.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

A claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, plaintiff must show that he was victimized by some suspect classification. *Id.* Absent some allegation or proof that the law was applied differently to plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination).

Plaintiff has not alleged that he has been treated differently because he is a member of any protected class. Simply being a prisoner does not make plaintiff a member of a protected class. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (to establish equal protection claim, inmate must prove that a racially discriminatory intent or purpose was a factor in the decision of the prison officials).

Moreover, as noted above, Plaintiff has failed to present a claim that any of his fundamental rights have been abridged because he does not have a liberty interest in obtaining parole. Plaintiff merely claims that he was treated one way and prisoner Bryant Matthew Jones was treated another way. However, such a claim, by itself, is not sufficient to state an equal protection claim. Plaintiff has not demonstrated that Defendants interfered with a fundamental right or that he is a member of a suspect class of individuals, so rational basis review is appropriate. See *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976) (holding that a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals).

To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Defendants argue that the circumstances of the treatment of prisoner Bryant Matthew Jones were not similar to Plaintiff "in all respects." In an affidavit, prisoner Bryant Matthew Jones (docket 36, Exhibit 9, ¶ 3), stated:

> 1. On January 21, 2009, I resided at Kinross Correctional Facility, level II, in A unit.
>
> 2. That on January 21, 2009, ARUS Patrick Harrington prepared a Parole Eligibility Lifer Report (PER) on my behalf for the Parole and Commutation Board.
>
> 3. Upon receiving my PER I noticed that my PER was inaccurate under the institutional adjustment section, stating that since my last PER was prepared I received major misconduct tickets, which was not true. I immediately informed ARUS Harrington of this error. He went back through my prison file to verify it was an error, then reprinted another copy of my PER making the proper corrections.

Contrary to Defendants' assertion, prisoner Bryant Matthew Jones's affidavit suggests that he and Plaintiff are similarly situated in all respects. Both prisoners were housed at Kinross, had PERs prepared by Defendant Harrington with major misconducts incorrectly added, and petitioned Defendant Harrington to have their respective PERs amended. Prisoner Bryant Matthew Jones's request for a correction of the errors was accommodated, but Plaintiff's request was not.

Defendants assert that Plaintiff was not similarly situated because "it is not clear whether prisoner Jones's PER had already been sent to the Parole Board, as was the case with the Plaintiff." (Docket # 30, ¶ 2, Page ID#171.) While such a finding would defeat Plaintiff's equal protection claim for a lack of the comparable prisoners being "similarly situated," this assertion is not supported by the record.

In the opinion of undersigned, there is a genuine issue of fact as to whether Plaintiff was similarly situated to prisoner Bryant Matthew Jones. If the prisoners were similarly situated, there is a genuine issue of fact as to whether Defendants intentionally treated Plaintiff differently from prisoner Jones. If the prisoners were similarly situated and Defendants intentionally treated Plaintiff differently, then there is a genuine issue of fact as to whether Defendants had a rational

basis for the differing treatment. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment as to Plaintiff's equal protection claims be denied.

Plaintiff claims that Defendants retaliated against Plaintiff for filing a grievance against Defendant Harrington related to the errors in Plaintiff's PER. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff has established the first element of a retaliation claim because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

The second analysis for a retaliation claim is whether the adverse action would deter a person of ordinary firmness from engaging in that conduct. In this case, the "adverse action" is Defendants' refusal to correct the PER and the "conduct" is Plaintiff's pursuit of relief from an incorrect PER. Defendants contend that "a prisoner of reasonable firmness would not be deterred by having an ARUS not correct mistakes in a PER, when it is known that the prisoner could simply

bring the mistakes to the attention of the Parole Board member at the interview." (Docket # 30, ¶ 3, Page ID#172.)  This argument is tenuous.  KCF-OP 06.05.103 lists the duties of a RUM and ARUS.  Paragraph 7 states that an RUM/ARUS "corrects any errors noted in parole procedure or prisoner records."  (Docket # 36, Exhibit 3, ¶ 7, Page ID#230.)  Furthermore, after Plaintiff raised the issue with the Parole Board, the Parole Board wrote a letter to Plaintiff stating, "Your concerns about omissions/errors in the PER must be directed to your RUM for the appropriate corrections." (Docket # 36, Exhibit 4, Page ID#232.)   These documents suggest that Defendants had the responsibility of correcting the  errors in Plaintiff's PER, and that Defendants deterred and impeded Plaintiff's pursuit of relief from the errors in his PER.

The third analysis for a retaliation claim is whether the adverse action was motivated, at least in part, by the protected conduct.  In an affidavit, John Ransom (docket # 36, Exhibit 10, ¶ 1-5, Page ID#245) stated:

> 1.  On Tuesday January 5, 2010, I John Ransom was a resident at Kinross Correctional Facility (KCF) resided in A unit.
>
> 2.  That I was standing in the door way of the Resident Unit Manager (RUM) Robert Norton's office door waiting to speak to him, when I directly observed and directly listen to inmate Gregory Brown #224137 and RUM Robert Norton talking about Brown's Parole Eligibility/Lifer Review Report (PER) and the Parole and commutation Board.
>
> 3.  I directly heard Brown inform Rum Norton that ARUS Patrick Harrington didn't submit his PER according to the Operating Procedure Policy and made several errors in his PER.
>
> 4.  I directly heard Brown inform Norton that he asked ARUS Harrington to correct the inaccurate information in his PER, and Brown stated that ARUS Harrington responded negatively and wouldn't correct his PER.

> 5. I directly heard RUM Robert Norton state to Brown that since he filed a grievance against ARUS Harrington he was not going to correct his PER.

John Ransom's affidavit, corroborating Plaintiff's claim that Defendant Harrington refused to correct Plaintiff's PER as a result of Plaintiff's grievance filing, creates a genuine issue of fact. Defendant Harrington denies that he refused to correct the PER errors as a result of Plaintiff's grievance filing and Defendant Norton denies that he made the statements alleged by John Ransom and Plaintiff.

The final analysis for a retaliation claim is whether the exercise of the protected right was a substantial or motivating factor in the Defendants' alleged retaliatory conduct. The foregoing discussion suggests that there is a genuine issue of fact as to whether the exercise of the protected right was a substantial or motivating factor in the Defendants' alleged retaliatory conduct. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment as to Plaintiff's retaliation claims be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' Motion for Summary Judgment on Plaintiff's due process claims. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket # 29) be granted as to Plaintiff's due process claims and denied as to Plaintiff's equal protection and retaliation claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:  August 14, 2012